

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 30  PM 2: 49

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | NO. 04-3488 |
| JESCO CONSTRUCTION CORPORATION ET AL. | SECTION "I" (2) |

## ORDER AND OPINION ON MOTIONS

Pending before the court in this interpleader action are (1) a Motion for Partial Summary Judgment filed by intervenor/claimants General Electric Capital Corp. and Phoenixcor, Inc. (collectively "GE"), Record Doc. No. 49, and (2) a Motion for Summary Judgment filed by intervenor/claimant United States Fire Insurance Company ("U.S. Fire"). U.S. Fire incorporated its opposition to GE's motion in its memorandum in support of its own motion. Record Doc. No. 52. GE filed a separate opposition to U.S. Fire's motion. Record Doc. No. 63. U.S. Fire received leave to file a reply memorandum. Record Doc. Nos. 66, 67. Intervenor/claimants Osborn & Osborn APLC

1

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

and R.A. Osborn, Jr. filed a memorandum in support of GE's motion for partial summary judgment and a memorandum in opposition to U.S. Fire's motion for summary judgment. Record Doc. Nos. 51, 62. GE and the Osborn claimants have entered into a settlement agreement as to the claims of the Osborn entities, in the event that GE prevails in its motion for partial summary judgment.

Neither the United States, Jesco Construction Corporation ("Jesco"), Jesco Construction Corp. of Mississippi ("Jesco Mississippi") nor New Orleans Marine Services, Inc. ("NOMS") filed any pleadings in connection with the pending motions.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon the written consent of all parties. Record Doc. No. 45.

The issue in the instant case, which appears to be one of first impression, is how to rank the competing claims of a perfected security interest holder and a surety who is subrogated to the rights of the United States Army Corps of Engineers (the "Corps"). GE had loaned money to Jesco, a construction contractor, and had perfected its security interest in Jesco's accounts receivable. The Corps admittedly owes Jesco $230,000 for Jesco's completion of a project for the Corps along the Mississippi River in Louisiana

(the "Mississippi Contract"). GE claims a priority right to the funds, which the Corps has deposited in the registry of this court.

The surety, U.S. Fire, was <u>not</u> involved in the Mississippi Contract and has no connection whatsoever with project addressed in the Mississippi Contract. However, U.S. Fire issued a bond to guarantee Jesco's performance of its separate contract with the Corps to construct an unrelated project in Charleston, South Carolina (the "Charleston Contract"). After Jesco defaulted on the Charleston Contract, U.S. Fire completed the work in Charleston and became subrogated to the rights of the Corps. U.S. Fire claims that its right as subrogee to the Corps arising from the Charleston Contract primes GE's perfected security interest in the account receivable from the separate Mississippi Contract.

Having considered the complaint, the record, the submissions of the parties and the applicable law, and for the following reasons, **IT IS ORDERED** that GE's motion for partial summary judgment is **GRANTED** and that U.S. Fire's motion for summary judgment is **DENIED**.

I.  <u>THE UNDISPUTED FACTS</u>

The material facts are undisputed. Phoenixcor loaned Jesco $2,000,000 on February 11, 1998. Jesco granted a security interest in all of its accounts receivable to

Phoenixcor to secure the loan. Phoenixcor perfected its security interest by filing a UCC-1 statement on March 27, 1998 and continued its perfected security interest by filing a supplemental financing statement on February 28, 2003.

GE Capital Corporation acquired 100% of the outstanding stock of Phoenixcor on April 19, 1999. Phoenixcor remains a wholly owned subsidiary of GE Capital Corporation.

On September 7, 1999, GE Capital loaned Jesco $1,800,000, secured by a security interest in Jesco's accounts receivable. GE Capital perfected its security interest by filing two UCC-1 statements on October 1, 1999 and continued its interest by filing two supplemental financing statements on September 30, 2004.

After Jesco defaulted on its payment obligations to GE, GE obtained a judgment in its favor against both Jesco and Jesco Mississippi in the principal amount of $4,568,021.75, plus interest, costs and attorney's fees. More than $3,000,000 remains owing under the judgment.

On December 16, 1998, Jesco entered into the Mississippi Contract[1] with the Corps to perform work along the Mississippi River. After Jesco completed the project,

---

[1] Neither the Mississippi Contract nor the Charleston Contract is in the record.

it entered into a settlement agreement with the Corps on April 10, 2000, in which the Corps agreed to pay Jesco an equitable adjustment of $230,000.

Thereafter, Jesco entered into an indemnity agreement with U.S. Fire on July 28, 2000, in which Jesco agreed to indemnify U.S. Fire from all loss incurred as a result of U.S. Fire's issuance of bonds on Jesco's behalf.

On May 9, 2001, Jesco entered into the Charleston Contract with the Corps to perform work in South Carolina. U.S. Fire issued a labor and material bond and a performance bond on Jesco's behalf for the Charleston Contract.

The Corps terminated Jesco from the Charleston project on September 27, 2002. U.S. Fire completed the project under its performance bond and suffered a net loss under that bond of more than $850,000. U.S. Fire also paid claims under its labor and materials bond in excess of $300,000. After filing suit, U.S. Fire received a judgment in its favor and against Jesco for more than $2,000,000.

The United States filed the instant interpleader and deposited the $230,000 owed to Jesco from the Mississippi Contract into the registry of the court. The United States named Jesco, Jesco Mississippi, Osborn and his law firm (which had represented Jesco in the settlement negotiations with the Corps over the Mississippi Contract) and NOMS

(which has a judgment against Jesco) as defendants. U.S. Fire and GE intervened to assert their claims to the funds.[2]

II.  ANALYSIS

    A.  The Threshold Legal Principles

It is undisputed that GE's perfected security interest in the $230,000 account receivable owed to Jesco by the Corps takes priority over the claim of an unsecured creditor. La. Rev. Stat. §§ 10:9-201(a), 10:9-203(f), 9-310(a); Capital Whse., Inc. v. Mayhall, No. 97-1796, 1999 WL 643709, at *3 (E.D. La. Aug. 23, 1999) (Barbier, J.); Tetra Applied Techs., Inc. v. H.O.E., Inc., 878 So. 2d 708, 712 (La. App. 3d Cir. 2004).

It is also undisputed that U.S. Fire, as surety for Jesco on the Charleston Contract and as a result of completing that project under its performance bond, is equitably subrogated to the rights of the Corps as owner on that contract. Pearlman v. Reliance Ins. Co., 371 U.S. 132, 138 (1962); National Shawmut Bank v. New Amsterdam Cas. Co., 411 F.2d 843, 845, 848 (1st Cir. 1969); Trinity Universal Ins. Co. v. United States, 382 F.2d 317 (5th Cir. 1967).

---

[2] U.S. Fire and GE each received assignments of 50% of whatever rights that John Shavers, the sole shareholder of Jesco, might have in the interpleaded funds. However, neither U.S. Fire nor GE are relying on those assigned rights in the instant motions.

"The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties." Pearlman, 371 U.S. at 136 n.12 (quoting Memphis L.R.R. Co. v. Dow, 120 U.S. 287, 301-02 (1887)). "And probably there are few doctrines better established than that a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Id. at 136-37.

As an equitable subrogee of the Corps under the Charleston Contract, U.S. Fire has the same rights that the Corps would have had in any unpaid funds which Jesco had earned or which the Corps had retained pending completion of that contract. The subrogee of the owner has a priority right to earned and retained funds for that contract. This right primes a lender's perfected security interest in the contractor's assignment of the proceeds from the contract to the lender. National Shawmut Bank, 411 F.2d at 848 (citing Pearlman, 371 U.S. at 132; Henningsen v. United States Fid. & Guar. Co., 208 U.S. 404 (1908); Prairie State Nat'l Bank v. United States, 164 U.S. 227, 235-36 (1896)).

The policy reason for elevating the subrogated surety above all other creditors is that, without the surety's performance, no funds would have been available to pay creditors at all. Id. at 849; see Trinity Universal Ins. Co., 382 F.2d at 320 (The surety

who completes the job "performs a benefit for the government, and has a right to the retained funds and remaining progress money to defray its costs."); Fidelity & Deposit Co. v. Scott Bros. Constr. Co., 461 F.2d 640, 642 (5th Cir. 1972) ("But for the surety's completion of the work, the obligee on the bond, be he owner or prime contractor, would have been entitled to apply the funds against the cost of completion.  It is the surety's performance which frees the funds, and, . . . the surety is entitled to them.") (quotation omitted).

U.S. Fire argues that it is subrogated to the right of the Corps to offset the $230,000 owed to Jesco under the Mississippi Contract against the losses incurred by U.S. Fire in completing the Charleston Contract.  "The right of setoff is a 'common right, which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" Chateaugay Corp. v. LTV Steel Co., 94 F.3d 772 (2d Cir. 1996) (quoting Gratiot v. United States, 40 U.S. (15 Pet.) 336, 370 (1841)).

A surety who pays under its labor and materials bond is subrogated to the rights of the contractor, not the government/owner, and is a creditor of the government for the amounts that the surety has paid under the bond.  The government has the right to set off against the funds it owes the contractor any taxes owed by the contractor to the

government, even though those taxes arise out of a different obligation than the construction contract. In these circumstances, the right of offset may be exercised by the government in priority to the right of the subrogated surety to the retained funds. Trinity Universal Ins. Co., 382 F.2d at 320 (citing Pearlman, 371 U.S. at 132; United States v. Munsey Trust Co., 332 U.S. 234 (1947)).

However, the surety's right as subrogee of the government as owner under the performance bond primes the right of the government to set off taxes owed to the government by the contractor, and the surety in this position is entitled to the retained funds without any offset. Id. The Fifth Circuit explained that the surety who completes the contract should not be in a worse position than if it had merely paid damages to the government to finish the project. "If the government can set off the amount of the unpaid taxes when the surety has completed the job, the surety would be forced to work for less than the contract price. An equity court should attempt to avoid such an unfair result." Id. at n.8.

B. Application of Legal Principles to Facts of the Instant Case

The question in this case is whether GE's perfected security interest in the funds owed to Jesco by the Corps because of Jesco's completion of the Mississippi Contract takes precedence over, or is subordinate to, the rights of U.S. Fire, a surety who is

subrogated to the Corps's rights, when that subrogation arises out of a wholly different and later contract between Jesco and the Corps. The parties agree that no prior cases have addressed this precise factual situation.

U.S. Fire relies on United States Fidelity & Guar. Co. v. Housing Auth. of Town of Berwick, 557 F.2d 482 (5th Cir. 1977), to assert that it can recover funds attributable to a contract other than the one it performed when the same owner (the Corps) and the same contractor (Jesco) entered into two separate contracts. In Berwick, the Housing Authority for the Town of Berwick entered into two separate construction contracts, called "Job 2" and "Job 3" in the opinion, with Delta General Construction Corporation. United States Fidelity and Guaranty Company ("USF&G") issued performance and payment bonds for both projects. Delta later assigned its interest in the outstanding retained funds from Job 2 to an insurance agency to secure a loan. Id. at 482.

After Delta defaulted on both contracts, USF&G completed both projects. The retained funds for Job 2 covered all of USF&G's losses on that project. After the Housing Authority paid USF&G for its losses, some $7,000 remained in the Job 2 retainage account. USF&G's losses on Job 3 exceeded the retained funds on that project. USF&G sought the $7,000 retainage from Job 2 to offset its Job 3 losses, while the

insurance agency claimed the excess retainage based on Delta's assignment to it of the retained funds for Job 2. Id. at 482-84.

The Fifth Circuit found that USF&G was subrogated to the Housing Authority's rights as owner and that USF&G's rights prevailed over the insurance company's claim because the contract between the Housing Authority and Delta allowed the Housing Authority to "backcharge" retainage from either of the two projects to pay for labor and materials attributable to the other project. "As a result no 'final payment of retainage' ever matured or became due [to] Delta under the prime contract for Job-2." Id. at 484.

> Had USF&G not paid those sums [to complete the projects] under its bond, the Authority had an express contract right and statutory responsibility [FN3: Louisiana Public Works Act, R.S. 38:2243] to use all of Delta's otherwise available contract funds, whether derived from Job-2 or Job-3[,] to pay them. Consequently, there never was a debt owed by the Authority to Delta and, therefore, the assignment by Delta to the Agency does not preclude recovery by USF&G of the net excess retainage of $7,188 from Job 2. As stated in P. P. Williams & Co. v. Roach, 12 La. App. 305, 125 So. 465, 468 (1929), "(an) assignor can assign no better rights than he has, and the assignee, of course, acquires no better rights than the assignor has."

Id. at 485 (emphasis added).

The facts in Berwick are not sufficiently on point with those of the instant case to support U.S. Fire's argument. Unlike U.S. Fire, which completed only the Charleston Contract, USF&G in Berwick completed both contracts. Furthermore, when USF&G stepped into the Housing Authority's shoes as subrogee, it had the express contractual

11

right to use the retainage from Job 2 to offset its losses on Job 3. No such contractual provision that authorizes U.S. Fire to offset its losses on the Charleston Contract with the equitable adjustment owed to Jesco on the Mississippi Contract appears in the record of the instant case. In addition, in <u>Berwick</u>, Delta never earned, and the Housing Authority never owed to Delta, the final retainage for Job 2 because of Delta's default on that contract. However, in the instant case, Jesco completed the Mississippi Contract and negotiated an equitable adjustment of an additional $230,000, which the Corps admittedly owes to Jesco. GE, as Jesco's assignee, has acquired a secured interest in those funds, which it has properly perfected.

U.S. Fire also relies on <u>Transamerica Ins. Co. v. United States</u>, 989 F.2d 1188 (Fed. Cir. 1993). In that case, the Corps of Engineers entered into two separate contracts with Bodenhamer Building Corporation to construct a school and a commissary. Transamerica Insurance Company bonded <u>both</u> projects. Bodenhamer defaulted on the school contract and Transamerica finished the school. Bodenhamer completed the commissary contract and received an equitable adjustment from the Corps of $500,000. Transamerica sought those funds to offset its losses on the school contract. <u>Id.</u> at 1189.

The Federal Circuit held that Transamerica, as subrogee of the Corps on the school contract, could recover the funds from the commissary contract in preference to

the contractor. The government was only the stakeholder and had no interest in the funds it owed to Bodenhamer. The Federal Circuit observed that the only competing claim to the funds was that of the contractor who had defaulted and who should not be placed in a better position than the surety who had completed the school contract. Id. at 1194.

The court emphasized "the equitable nature of the right of subrogation" and quoted with approval from a state court case with similar facts, as follows:

> Fairness would dictate that the surety be accorded the owner's rights and remedies with respect to the contractor. In circumstances, like the present, where the same contractor is engaged in more than one project, it becomes clearer that it is the reach or scope of the remedy rather than the equitable right itself which is at issue. Finding no persuasive reasons to the contrary, we adopt the view that, "[t]he right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice; and is independent of any contractual relations between the parties."

Id. at 1192 (quoting District of Columbia v. Aetna Ins. Co., 462 A.2d 428, 431 (D.C. Ct. App. 1983) (quoting Memphis L.R.R. Co., 120 U.S. at 301-02)) (emphasis added).

U.S. Fire insists that "[t]he general rule is that 'a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." Id. at 1194 (quoting Pearlman, 371 U.S. at 137) (emphasis added). U.S. Fire argues expansively that this language by the United States Supreme Court means that the surety, as subrogee of the Corps, succeeds to "all the rights" that the federal

government would have had against Jesco, including the right to set off the funds that the Corps owed to Jesco from the Mississippi Contract against any losses that the Corps would have incurred had it completed the Charleston Contract or, as in this case, U.S. Fire's losses incurred in completing the contract.

U.S. Fire reads entirely too much into the Supreme Court's words in Pearlman. The context in that case was a single contract between the government and the contractor. When the contractor went bankrupt and failed to pay the labor and materials costs of the project, the surety paid those costs. Pearlman, 371 U.S. at 133-34. The Court held that the surety was entitled to recover all of the retained funds held by the government that were owed to the contractor, as against the sole competing claim of the contractor's trustee in bankruptcy. Id. at 141. Again, that is not the instant case.

U.S. Fire also cites Chateaugay Corp. v. LTV Steel Co., 94 F.3d 772 (2d Cir. 1996), as an example of a surety who became subrogated to the rights of a government agency without any limitations on the surety's right to setoff, such as a limitation that the obligation of the principal arise out of a single contract or that the government agencies between whom a setoff is sought be a single agency.

In Chateaugay, Aetna Casualty & Surety Co. issued a bond to a coal mine owner, LTV Steel Company, guaranteeing payments of black lung disease disability benefits to

government would have had against Jesco, including the right to set off the funds that the Corps owed to Jesco from the Mississippi Contract against any losses that the Corps would have incurred had it completed the Charleston Contract or, as in this case, U.S. Fire's losses incurred in completing the contract.

U.S. Fire reads entirely too much into the Supreme Court's words in Pearlman. The context in that case was a single contract between the government and the contractor. When the contractor went bankrupt and failed to pay the labor and materials costs of the project, the surety paid those costs. Pearlman, 371 U.S. at 133-34. The Court held that the surety was entitled to recover all of the retained funds held by the government that were owed to the contractor, as against the sole competing claim of the contractor's trustee in bankruptcy. Id. at 141. Again, that is not the instant case.

U.S. Fire also cites Chateaugay Corp. v. LTV Steel Co., 94 F.3d 772 (2d Cir. 1996), as an example of a surety who became subrogated to the rights of a government agency without any limitations on the surety's right to setoff, such as a limitation that the obligation of the principal arise out of a single contract or that the government agencies between whom a setoff is sought be a single agency.

In Chateaugay, Aetna Casualty & Surety Co. issued a bond to a coal mine owner, LTV Steel Company, guaranteeing payments of black lung disease disability benefits to

LTV's employees. When LTV declared bankruptcy, Aetna paid the required disability benefits up to the maximum amount of its bond. Under federal law, the Department of Labor ("DOL") continued to pay such benefits after the surety had exhausted its obligation, but the DOL retained the right to recover from LTV what the DOL had paid. Aetna claimed that it was subrogated to the DOL's right to set off its black lung payments against a tax refund owed to LTV by a different government agency, the Internal Revenue Service. Id. at 773-74.

The Second Circuit found that the DOL had a "longstanding common law right to set off debts owed to a citizen against that citizen's liability to the government." Id. at 777. Thus, the DOL "possesses a common law right to setoff its nontax debts against" the tax refund owed to LTV by the IRS and, because "Aetna is subrogated to any rights the DOL might have to recover funds from LTV Steel, . . . Aetna has an interest in the tax refund." Id. at 779. Based on this holding, U.S. Fire argues that there should be no limits on its subrogated right to exercise "all the rights" of the Corps against Jesco, including the Corps's right of setoff.

The fundamental flaw in all of U.S. Fire's arguments is that the result it seeks does not comport with the equitable nature of subrogation, under the undisputed facts of this case. In Transamerica, the Federal Circuit distinguished cases in which another entity

had a competing interest to the funds. "None of the other cases cited had the same balance of equities at hand. Each time, another interest beside that of the contractor took priority over the surety's claim." Id. at 1194.

This distinction is significant. The Transamerica court held that, when a competing interest exists, "the surety's equitable right of subrogation should be counterbalanced by the other interests involved. It is 'equitable' in those situations to give the surety top priority <u>only over funds related to the contract it completed</u>." Id. at 1194 (emphasis added). GE's perfected security interest in a matured debt owed to Jesco that predates U.S. Fire's involvement with Jesco is just such a competing interest.

At least one federal district court and one state supreme court have rejected the concept that a subrogated surety under one contract has a priority right to recover funds from an unrelated contract between the same contractor and the same principal. Rather, the surety is an unsecured creditor as to the unrelated project.

These courts held that "'[p]riority based on equitable subrogation in one contract does not provide priority in excess funds from another contract.'" In re Eastern Marine, Inc., 104 B.R. 421, 424 (N.D. Fl. 1989) (quoting Transamerica, Inc. v. Barnett Bank, 540 So. 2d 113, 117 (Fl. 1989)).

> In so holding, the Supreme Court of Florida expressly approved the dissent below which stated:

> [T]o the extent Transamerica [the surety] is claiming proceeds on construction contracts not covered by its bond based on the "dragnet" collateral provisions in its indemnity agreement with [the principal], or earned but unpaid construction funds held by the owner which exceed the surety's loss on a particular job, it appears Transamerica has left the safe haven of equitable subrogation for the posture of a contract assignee, or "conventional subrogation," and must jump the hurdles of having to perfect such a security interest under the [Uniform Commercial] Code.
>
> <u>Transamerica Insurance Co. v. Barnett Bank</u>, 524 So.2d 439, 450 (Fla. 5th DCA 1988) (dissenting opinion). This is the precise situation in this case; IINA [the surety] is also leaving the "safe haven" of equitable subrogation when it claims to have an equitable interest in anything other than the lighter vessel contract [for which it issued a bond]. For IINA to have a greater interest in [the contractor's] other assets than that of a general creditor, it had to "jump the hurdles" of having to perfect its security interest. This it did not do.

<u>Id.</u>

In the instant case, U.S. Fire had nothing whatsoever to do with the Mississippi Contract, which was completed before U.S. Fire entered into its agreements with Jesco. GE perfected its security interest in the proceeds of the Mississippi Contract long before U.S. Fire issued any bond to Jesco. The funds deposited in the registry of the court represent a fully matured debt owed to Jesco, and therefore to GE, by the Corps.

Subrogation is an equitable right. U.S. Fire has not cited any case in which the facts, or the equities, mirror those in the instant case. There would be nothing equitable about permitting U.S. Fire, which had nothing to do with the Mississippi Contract, to

prime the properly and previously obtained secured interest of GE. Balancing the equities at hand in this case, I find that GE's perfected security interest in the funds primes any interest that U.S. Fire has by way of subrogation to the Corps.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Partial Summary Judgment filed by General Electric Capital Corp. and Phoenixcor, Inc. is **GRANTED**. **IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by United States Fire Insurance Company is **DENIED**.

New Orleans, Louisiana, this _30th_ day of January, 2006.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE